# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# LEWIS T. BABCOCK, JUDGE

Civil Case No. 07-cv-00001-LTB

GLORIA M. MESTAS,

      Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

# ORDER
_____

      Plaintiff, Gloria M. Mestas, appeals the final decision of Michael J. Astrue, Commissioner of Social Security, denying her application for Social Security Disability benefits and Supplemental Security Income benefits. Following an April 11, 2006, hearing, Administrative Law Judge ("ALJ") Paul Keohane issued an unfavorable decision on May 10, 2006. The Appeals Council determined there was no basis for changing the ALJ's decision, thus making it the Commissioner's final decision. Plaintiff has exhausted her administrative remedies and this case is ripe for judicial review. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral arguments would not materially assist the determination of this appeal. After consideration of the parties' briefs and the administrative record, and for the reasons set forth below, I AFFIRM.

## I. BACKGROUND

      Plaintiff was born on June 7, 1964, and was forty-one years of age at the time of the hearing. [Administrative Record "AR" 53, 698]. She has a high school education. [AR 71]. Her

past work history includes employment as a hospital admissions clerk, general clerk, and secretary. [AR 78]. Plaintiff claims she is disabled because of depression, anxiety, kidney disease, breast cancer, carpal tunnel syndrome, and deep vein thrombosis in her left leg. Plaintiff's alleged onset date is March 1, 2003, the last date she worked. [AR 65].

## A. Plaintiff's Medical History

Plaintiff reports a history of health problems prior to her onset date beginning with the removal of her right kidney in 1990. [AR 110]. In 1997, Plaintiff had a stent placed in her remaining kidney. [AR 110]. In July 2002, Plaintiff was treated for deep vein thrombosis in her left leg. [AR 183–85].

In February 2003, Plaintiff was admitted to the St. Mary-Corwin Hospital ("St. Mary") emergency room on multiple occasions with a respiratory infection [AR 307], situational anxiety [AR 307], suicidal thoughts [AR 310], leg pain [AR 314–21, 325], and sciatica [AR 329]. Plaintiff was treated at Southern Colorado Family Medicine ("SCFM") for fatigue, headaches, cough, abdominal pain, and bloating. [AR 409–13]. In March 2003, Plaintiff was again admitted to the St. Mary emergency room for leg pain [AR 334] and was treated at SCFM for the same condition [AR 406–08].

From April 2003 through January 2004, Plaintiff was diagnosed with and treated for cancer in her left breast. [AR 337–345, 390–407, 432–37, 446–454, 585–92]. During that time, Plaintiff also complained of headaches, abdominal pain, and leg pain. [AR 395–96, 590]. In November 2003, Plaintiff reported depression concomitant with vertigo, increased appetite and weight gain, lethargy, decreased self-esteem, and disinterest in life. [AR 388–89].

In January and February 2004, Plaintiff was treated for chest pains, painful urination,

dysuria, uterine bleeding, and urinary tract infection. [AR 379–85, 459–64]. Plaintiff continued to complain of depression and anxiety. [AR 379, 580]. From April 2004 through June 2004, Plaintiff was treated for pain in her left leg and arm, and pain and a benign lump in her left breast. [AR 430–31, 467–75, 580–81]. Plaintiff continued to suffer from depression. [AR 580–81]. In January 2005, Plaintiff complained of continued abdominal pain and depression. [AR 565].

From March 2005 through June 2005, Plaintiff was treated for extreme fatigue, overwhelming depression, anxiety, body aches, sore throat, shortness of breath, headache, and nausea. [AR 554–63]. Plaintiff was admitted to St. Mary in March 2005 with depression, anxiety, and suicidal thoughts. [AR 532–34]. Plaintiff was diagnosed by a physician's assistant with major depression and was assessed a Global Assessment of Functioning ("GAF") score of 30. [AR 534]. In July and August 2005, Plaintiff suffered from several urinary tract infections. [AR 550–51]. Plaintiff continued to complain of leg, pelvic, and abdominal pain through the close of the records period in October 2005. [AR 546–48, 652–53].

### B. Disability Hearing

At Plaintiff's hearing on April 11, 2006, the ALJ questioned Plaintiff about her prior and current health conditions. Plaintiff testified regarding her back, arm, leg, and breast pain, depression, and anxiety. [AR 704–20]. Plaintiff testified she was taking medication for depression at the time of the hearing but that it was not completely effective and that "some days I don't even get out of bed." [AR 705, 717]. Plaintiff reported forgetfulness and inability to focus. [AR 715–16]. Plaintiff reported she was only sleeping three hours per night and she was taking naps of an hour and a half duration every day. [AR 710–11]. Plaintiff also reported anxiety that prevented her from doing her own grocery shopping. [AR 711, 717]. She reported that six out

of every seven days were "bad days" during which she remained at home in bed the entire day. [AR 711–12, 717]. Plaintiff testified she was not seeking counseling because she did not have insurance. [AR 705].

Plaintiff reported pain and weakness in her left leg and arm. [AR 706–07]. Plaintiff reported difficulty walking, sitting, standing, stooping, and reaching. [AR 706–10]. Plaintiff reported she was unable to style her own hair. [AR 710]. She reported driving four miles to visit her father every day, but no other driving. [AR 713]. Plaintiff also reported continued arm pain due to a carpal tunnel injury suffered before the onset date. [AR 700–01, 716].

The ALJ then questioned a vocational expert ("VE") regarding Plaintiff's past relevant work. The ALJ first asked whether a hypothetical person with a work history similar to Plaintiff's—but who is limited to light work which does not require more than frequent manipulation, handling, and fingering—could perform any of Plaintiff's past relevant work as a hospital admissions clerk, general clerk, and secretary. [AR 725]. The VE testified that the hypothetical person could perform all Plaintiff's past relevant jobs, but that a similar person who was limited to no more than occasional manipulation, handling, and fingering could not perform those jobs. [AR 725]. The ALJ then asked whether a hypothetical person with a work history similar to Plaintiff's—but who could walk no more than ten minutes at a time, could sit for no more than two hours at a time, could stand for no more than five minutes at a time, could kneel no more than occasionally, could never climb stairs or reach overhead with her left hand, could not bend over or lift more than five pounds more than occasionally, and who would need to rest for one and a half hours a day—could perform any other work. [AR 725–26]. The VE replied that such person would not be ale to perform any work. [AR 726]. The ALJ finally inquired

about a hypothetical person with the same profile, but who also could not work a regular schedule on the majority of days in any given week. [AR 726]. The VE responded that such an individual would be unable to work. [AR 726]. The VE also testified that if the hypothetical person had a moderate limitation on her ability to work with the public, this would not affect the person's ability to perform Plaintiff's past relevant work, but that a hypothetical person with a marked limitation in her ability to interact with the public would be unable to perform Plaintiff's past relevant work. [AR 726–28].

### C.  ALJ Ruling

In his ruling, the ALJ applied the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520. Applying the first step, the ALJ determined Plaintiff had not performed substantial gainful activity since her onset date of March 1, 2003. [AR 22]. Applying the second step, the ALJ determined Plaintiff had one severe impairment: right carpal tunnel syndrome. [AR 22]. Applying the third step, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 24]. Applying the fourth step, the ALJ determined Plaintiff was able to perform past relevant work as a hospital admission clerk, general clerk, and secretary. [AR 25]. As the ALJ found Plaintiff was not disabled at step four, it was unnecessary to proceed to step five: determining whether the claimant was able to perform other work that exists in significant numbers in the national economy. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) ("If at any point in the process the Secretary finds that a person is disabled or not disabled, the review ends.").

In reaching his conclusion, the ALJ determined Plaintiff had the residual functional

capacity ("RFC") to perform work with no specific exertional limitations, but with no more than frequently engaging in either gross or fine manipulation with her upper extremities. [AR 24]. In making this finding, the ALJ considered both the medical evidence and Plaintiff's testimony. The ALJ found that the medical records did not support Plaintiff's allegations and concluded "that the claimant is significantly exaggerating her symptoms. . . . Considering the lack of objective medical evidence, the undersigned finds that the claimant's complaints of ongoing functional limitations of such magnitude are not credible, and thus her allegations of severe, ongoing pain and other symptoms are given little weight." [AR 25]. Accordingly, the ALJ found Plaintiff had not been under a disability as defined in the Social Security Act from January 17, 2003, through the date of the decision on May 10, 2006. [AR 26].

## II. STANDARD OF REVIEW

My review in a Social Security appeal is limited to whether the final decision is supported by substantial evidence and the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Although I do not reweigh the evidence or try the issues *de novo*, I must examine the record as a whole—including anything that may undercut or detract from the ALJ's findings—in order to determine if the substantiality test has been met. *Id*. at 1262. Evidence is substantial if it amounts to "more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). Evidence is not substantial if it is overwhelmed by other evidence in the record, or constitutes a mere conclusion. *Grogan*, 399 F.3d at 1261–62. If the ALJ's decision is not supported by substantial evidence, or if the ALJ failed to provide a sufficiently clear basis from which I may determine the appropriate legal standards were applied, I

may reverse. *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994).

## III. DISCUSSION

Plaintiff raises two issues on appeal: (1) the ALJ erred in step two by failing to find Plaintiff's anxiety and depression "severe" and (2) the ALJ's erred in step four when he failed to consider Plaintiff's mental impairments, failed to make a finding or proper inquiry regarding the mental demands of Plaintiff's prior work, and relied on inaccurate or incomplete vocational expert testimony when considering Plaintiff's physical impairments.

### A. Step Two Analysis

Plaintiff testified she suffered from and was treated for depression and anxiety frequently during the claimed period, and had at least three reported episodes of suicidal ideation. On March 10, 2005, Plaintiff was examined at St. Mary by Bernard Williams—a physician's assistant—who diagnosed "major depression" and "Global Assessment of Functioning . . . probably about 30." [AR 534]. Accordingly, Plaintiff argues her mental impairments should have been considered severe. I disagree.

My review is limited to whether the ALJ's finding that Plaintiff did not have a severe mental impairment was reached through the application of correct legal standards and was supported by substantial evidence that a reasonable mind might accept to support the conclusion. *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991); *Campbell*, *supra*, 822 F.2d at 1521. An impairment is not severe if the effect of such impairment is so slight that it could not interfere with or have a serious impact on the claimant's ability to do basic work activities. *See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); 20 C.F.R. § 404.1521(a). Basic work activities are the "abilities and aptitudes necessary to do most jobs," and include the facility to understand,

remember, and carry out simple instructions; to use judgment; to respond appropriately to supervisors, co-workers, and usual work situations; and to deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b)(3)-(6).

A claimant bears the burden at step two to present evidence that she has a medically severe impairment or combination of impairments, and—to meet that burden—must furnish medical or other evidence in support of her claim. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Although the Tenth Circuit considers the necessary showing to be "*de minimis*," a claimant "must show more than the mere presence of a condition or ailment." *Hinkle, supra*, 132 F.3d at 1352. Isolated and unsupported comments by the claimant are insufficient by themselves to demonstrate the existence of a severe mental impairment. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 2006).

The ALJ discussed at length the evidence in the record relating to Plaintiff's mental impairments. Despite Plaintiff's testimony and the record, the ALJ found Plaintiff's mental impairments resulted in no more that minimal ongoing functional limitations insufficient to be considered severe. In support, the ALJ noted the record indicated Plaintiff only intermittently sought treatment for her depression and anxiety, and her episodes were diagnosed as situational and short lived by her treating physicians. Plaintiff received conservative treatment with prescriptions. Plaintiff—by her own admission—did not seek counseling or other follow up care.

The ALJ also noted that Plaintiff's GAF of 30 was assessed by a physician's assistant ("PA") and that such assessment was inconsistent with the PA's own observations, notes, and suggested treatment. PAs are not "acceptable medical sources." *See Martin v. Barnhart*, 470 F. Supp. 2d 1324, 1328 (D. Utah 2006) (citing Social Security Ruling 06-03p, 2006 WL 2329939

(August 9, 2006) ("SSR 06-03p")). Instead, the opinion of a PA is considered an "other source" that "cannot establish the existence of a medically determinable impairment." SSR 06-03p. Nonetheless, a PA's opinion is entitled to some weight based upon how long the PA has known and how frequently the PA has examined the claimant, how consistent the PA's opinion is with other evidence, the degree to which the PA presents relevant evidence to support an opinion, how well the PA explains the opinion, whether the PA has a specialty or area of expertise related to the claimant's impairment, and any other factors that tend to support or refute the opinion. *Id*.

The record does not indicate the PA had known, examined, or treated Plaintiff prior to March 10, 2005. As the ALJ noted, the GAF of 30 was inconsistent with the PA's own examination notes indicating: "The patient is an alert female in no acute distress. . . . She is pleasant, cooperative. Her affect is within normal range and intensity. Mood is euthymic. . . . Her thoughts appear to be organized with no evidence of psychosis, loose associations or flight of ideas." [AR 534]. The PA presented no relevant evidence nor explanation to support his opinion that Plaintiff's GAF was "probably about 30." Under SSR 06-03p, therefore, it was not error for the ALJ to fail to accord significant weight to the PA's conclusions. Moreover, the PA did not state or even infer that Plaintiff's depression would interfere with her ability to work. In the absence of any evidence indicating the PA assigned the GAF score because he perceived an impairment in Plaintiff's ability to work, "the score[], standing alone, do[es] not establish an impairment seriously interfering with [Plaintiff]'s ability to perform basic work activities." *Cainglit v. Barnhart*, 85 F. App'x 71, 75 (10th Cir. 2003). Accordingly, I find the ALJ's findings that Plaintiff did not have a severe mental impairment to be supported by substantial evidence.

Although Plaintiff submitted a Med-9 form [AR 679] to the Appeals Council indicating

she was disabled by depression, this does not change my analysis. The Med-9 form was a simple "check-the-box" form that was not accompanied by supporting treatment or examination records or findings. This type of form amounts to weak evidence at best—certainly insufficient to overcome the substantial evidence upon which the ALJ based his finding. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) ("Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence."); *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

### B. Step Four Analysis

Plaintiff also contends the ALJ failed at step four to consider Plaintiff's mental impairments, failed to make a finding or proper inquiry regarding the mental demands of Plaintiff's prior work, and relied on inaccurate or incomplete vocational expert testimony when he considered Plaintiff's physical impairments. Initially, I note that the ALJ did in fact consider Plaintiff's alleged mental impairments when determining Plaintiff's RFC, but found Plaintiff's testimony regarding her ongoing debilitating depression and anxiety, inability to keep a regular schedule, and inability to interact with the public to be not credible in light of her own testimony and all the available evidence. [AR 25]. When the ALJ makes a credibility determination—as the ALJ did here—based on a review of the record and based upon substantial evidence indicating a lack of credibility, such a determination will not be overturned on review. *See Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).

In a step four proceeding, the ALJ reviews the claimant's RFC and compares it the physical and mental demands of work she has done in the past. *See Henrie v. U.S. Dep't of*

*Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993). The step four analysis is comprised of three phases: "Social Security Ruling 82-62 addresses the ALJ's role more specifically, requiring him or her to make findings regarding 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given his or her residual functional capacity." *Id*.; *see also Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). When there is evidence of a mental impairment that allegedly prevents a claimant from working, the ALJ must follow the three-step procedure in order to evaluate the impact of such mental impairments on the claimant's ability to do past relevant work. *Winfrey*, 92 F.3d at 1024. When, however, the ALJ determines based upon substantial evidence that a claimant has no mental impairments on her ability to work—as the ALJ determined here—a "more detailed finding that independently examine[s] the objective mental demands" of the claimant's past relevant work is "entirely unnecessary." *See Westbrook v. Massanari*, 26 F. App'x 897, 903 (10th Cir. 2002).

I find Plaintiff's argument that the ALJ improperly relied on inaccurate or incomplete vocational expert testimony when considering Plaintiff's physical impairments to be likewise unavailing. Although Plaintiff testified she could walk no more than ten minutes at a time [AR 708], could sit for no more than two hours at a time [AR 708], could stand for no more than five minutes at a time [AR 708], could kneel no more than occasionally [AR 709], could never climb stairs or reach overhead with her left hand [AR 709], could not bend over or lift more than five pounds more than occasionally [AR 709], and would need to nap for one and a half hours every day [AR 711], the ALJ ultimately found this testimony to be not credible in light of Plaintiff's medical records and other non-testimonial evidence. [AR 25]. Accordingly, although the ALJ

questioned the VE about a hypothetical person with the limitations Plaintiff claimed in her testimony, he made clear that he was "looking at her testimony and giving the credibility for the purposes of this question." [AR 725]. After making a credibility determination following review of all the evidence, the ALJ ultimately found these limitations inapplicable to Plaintiff. [AR 25]. Instead, the ALJ found Plaintiff's medical and other records supported only a finding of right carpal tunnel syndrome that resulted in a significant, ongoing limitation in Plaintiff's ability to engage in manipulative activity with her upper extremities on more than a frequent basis. [AR 25].

Plaintiff argues the VE's testimony did not conform to the Dictionary of Occupation Titles ("DOT"). Specifically, Plaintiff quotes the following exchange:

> ALJ: Okay. Let's assume the first hypothetical with same vocational profile, but let's assume that the limitation would be that on—in a manipulative area that the person as far as gross and fine manipulation handling and fingering would be frequent, but not repetitive. Would that allow for the past jobs?
> VE: Yes.
> ALJ: What if it—number two what if it were limited to occasional other than frequent. What would that do?
> VE: It would eliminate those jobs.

Plaintiff argues this exchange demonstrates the VE was unclear about the difference between frequent and occasional limitations. Examination of the VE's testimony in light of the DOT, however, clearly rebuts Plaintiff's position. Under the DOT, a job that requires a task be performed "occasionally" means the "activity or condition exists up to 1/3 of the time" and a job that requires a task be performed "frequently" means the "activity or condition exists from 1/3 to 2/3 of the time." *See, e.g.*, DOT 201.362-030, Secretary (1991). Accordingly, a limitation of "frequent" manipulation means the hypothetical person would be able to perform fine

-12-

manipulation 1/3 to 2/3 of the time spent at the job in question, while a limitation of "occasional" manipulation means the hypothetical person would be able to perform fine manipulation up to 1/3 of the time spent at the job in question.

As Plaintiff concedes, the DOT states that—while some of Plaintiff's past relevant jobs require only occasional reaching, handling, or feeling—none of Plaintiff's past relevant jobs require reaching, handling, or feeling more than frequently. The VE—in conformity with the description of Plaintiff's past relevant jobs found in the DOT—testified that a hypothetical person who was limited to no more than frequently reaching, handling, or feeling would be able to perform all Plaintiff's past relevant jobs. While the VE testified—again in accordance with the DOT—that a hypothetical person who could only perform reaching, handling, or feeling up to one third of the time spent at any particular job would be unable to perform Plaintiff's past jobs, the ALJ determined based upon substantial evidence that Plaintiff was not such a hypothetical person. Accordingly, the ALJ properly determined that Plaintiff retained the residual functional capacity to perform her past relevant jobs.

## IV. CONCLUSION

Review of the ALJ's decision shows that in all respects the ALJ applied the correct legal standards and that his factual findings were supported by substantial evidence. Accordingly, the ALJ's May 10, 2006, administrative decision in this matter is AFFIRMED.

Dated: January   7  , 2008.

BY THE COURT:

   s/Lewis T. Babcock   
Lewis T. Babcock, Judge